IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAMILTON BROTHERS PETROLEUM CORPORATION, BHP BILLITON PETROLEUM GREAT BRITAIN, LIMITED, and BHP PETROLEUM (U.K.) CORPORATION, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-12-2493 |
| SCOTT A. CUNNINGHAM, | § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Pending is Defendant Scott A. Cunningham's Motion to Dismiss Complaint for Lack of Personal Jurisdiction (Document No. 9). After carefully considering the motion, response, reply, sur-response, and applicable law, and having heard the arguments of counsel at the Rule 16 Scheduling Conference, the Court concludes as follows:

## I.   Background

Plaintiffs   Hamilton   Brothers   Petroleum   Corporation ("PetCorp"), BHP Billiton Petroleum Great Britain, Limited ("BHP Great Britain"), and BHP Petroleum (U.K.) Corporation ("BHP UK") (collectively, "Plaintiffs") seek declarations from the Court that they have not breached any of their obligations under two contracts that give Defendant Scott A. Cunningham ("Cunningham"), a former

executive for several Hamilton Oil companies, an interest in certain oil and gas properties in the North Sea.[1]   Plaintiffs' complaint alleges that Cunningham has challenged the accounting and calculation of the money owed to him under these contracts, that he previously brought suits in both Colorado and England on these issues, and that he has continued to send letters and make demands for an accounting even after the resolution of those cases. Plaintiffs contend that they, in fact, have overpaid Cunningham by more than $800,000, an amount that PetCorp is offsetting against future monies due.  Cunningham moves to dismiss the case for lack of personal jurisdiction.

II.  Personal Jurisdiction

A.  Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  See Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend

---

[1] Document No. 1 (Orig. Cmplt.).  According to the complaint, PetCorp is responsible for making the payments, and BHP Great Britain and BHP UK are obligated to account to PetCorp in connection with the oil and gas properties at issue.  Id. at 2.

as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). Two types of personal jurisdiction are recognized: (1) specific and (2) general. Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984). Alternatively, general jurisdiction may be exercised over a defendant who has substantial, systematic and continuous contacts with the forum. See Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a prima facie case of personal jurisdiction. See Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). Proof by a preponderance of the evidence is not required. Kelly v. Syria Shell Petro. Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). A plaintiff may present a prima

facie case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *See* WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be construed in the plaintiff's favor. *See* Alpine View, 205 F.3d at 215.

B.   Analysis

Plaintiffs seek a declaratory judgment that they did not breach two contracts. The first contract, which Plaintiffs call the NPI Agreement-1971AU, is apparently a Net Profits Agreement that reconstituted a series of assignments in 1971, which gave Cunningham a carried working interest in certain oil and gas properties. The second contract, dated January 1, 1988, but which Plaintiffs call the NPI Agreement-1977AU, is also a Net Profits Agreement that restated assignments made in 1978, of which Cunningham is also a beneficiary.[2]

The parties do not dispute that Cunningham is a citizen of Colorado for diversity purposes.[3] Plaintiffs allege no facts to

---

[2] Document No. 1 at 4-6, exs. 1 & 2.

[3] He also owns a home in California, but his principal residence is in Colorado and both parties state that he is a resident of Colorado. Document No. 1 at 2; Document No. 9, ex. A at 2.

4

support general jurisdiction, but contend that Cunningham's dealings with Plaintiff PetCorp, a company located in Texas, and his demand to examine PetCorp's books and records in Texas, are sufficient to subject him to this Court's jurisdiction.[4]

Plaintiffs contend that "PetCorp has conducted much of the activity under the NPI Agreements - the calculations of the amounts to be paid, the independent audits of those calculations, and the decisions to distribute funds - in Houston."[5]  Plaintiffs contend that Cunningham has corresponded with PetCorp in Houston and has demanded access to PetCorp's records and books, which are in Houston.[6]  In support thereof, Plaintiffs produce three letters from Cunningham's attorney to BHP Billiton Petroleum's accounting manager in Houston regarding the contracts.

Cunningham provides verified proof in the form of his affidavit that the relevant contracts were signed and executed in Colorado.[7]  He further testifies that when these contracts were formed, PetCorp was headquartered in Colorado and its president,

---

[4] Cunningham states that he lived in Texas from 1959-1960, prior to joining the Hamilton Oil organization, but has not worked in Texas, traveled to Texas for work, or worked for Texas-based company since that time.  Document No. 9, ex. A at 2.

[5] Document No. 12 at 2, ex. 4 at 2-4.

[6] Document No. 12 at 2-3.

[7] Document No. 9, ex. A ¶¶ 6-7.

who signed the agreements, resided in Colorado.[8]     Cunningham
further cites evidence that he has received his money under the
agreements through wire transfers from London to Colorado.[9]    He
asserts that PetCorp never gave him access to its books and records
in Houston, and therefore neither he nor his representatives
traveled to Houston to review such documents.

    "[M]erely contracting with a resident of the forum state is
insufficient    to    subject    the    nonresident    to    the    forum's
jurisdiction." Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778
(5th Cir. 1986).    In this case, there is no evidence that
Cunningham even contracted with a Texas company.    His affidavit
states, and Plaintiffs do not deny, that when the contracts were
made and executed that PetCorp was headquartered in Colorado and
only later did it move to Texas.    Plaintiffs' evidence shows only
that Cunningham's lawyer sent three letters over a period of
13 months (October 28, 2010, September 20, 2011, and November 29,
2011) to Plaintiff BHP Billiton's accounting manager at his Houston
office, variously requesting calculations and data to support the
adjustments of the payments Plaintiffs made to Cunningham, eleven
months later complaining about BHP's delay in providing the
requested accounting data, and finally offering--because "the
records . . . may be quite voluminous"--to send to the accounting

---

[8] Id. ¶ 8.

[9] Document No. 9, ex. B.

6

manager's office in Houston Cunningham's retained accountants to review the records where they are maintained.  The latter offer was not accepted and hence neither Cunningham nor his retained accountants came to Houston to examine the records.  None of the three letters forms the basis for an intentional tort claim, where one such contact may be sufficient to establish personal jurisdiction, and no intentional tort is alleged.[10]  None of the letters solicited business from or sought to have a contractual relationship with a Texas resident.  These three letters, and any related telephone conversations regarding the desired accounting, are wholly insufficient to establish personal jurisdiction over Cunningham in Texas.  The only reason that any communication requesting accounting data and records was addressed to BHP in Texas is because of its or PetCorp's unilateral decision to move the relevant business records to Texas and conduct their audits in Texas.  *See* Holt, 801 F.2d at 778 (finding that "extensive telephonic and written communication" with the Texas corporation was "insufficient to constitute purposeful availment" because the communications "rested on nothing but the mere fortuity that [plaintiff] happens to be a resident of the forum"); Brammer Eng'g, Inc. v. E. Wright Mountain Ltd. P'ship, 307 F. App'x 845, 847 (5th

---

[10] *See, e.g.*, Wein Air, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

Cir. 2009) (unpublished op.) ("[plaintiff's] allegations that defendants sent communications to it in Louisiana, and requested that [plaintiff] 'provide records' or conduct an audit of its records are the type of merely fortuitous contacts that cannot support personal jurisdiction (*i.e.*, they are contacts resulting from the mere fact that the plaintiff is a resident of the forum state and not from any purposeful act of the defendants directed towards the forum state).").

Plaintiffs also argue that in a currently-pending Colorado class action lawsuit, in which Cunningham is a plaintiff, the class action plaintiffs have sought an order that they are entitled to an accounting. Plaintiffs in this suit assert that because such an accounting would have to take place in Texas, this demand further supports this Court's exercise of jurisdiction. Again, Cunningham's need to perform a court-ordered accounting of Plaintiffs' records at Plaintiffs' offices in Texas would be a mere fortuitous contact with Texas, due solely to Plaintiffs' decision to place the subject records in Texas, and would fall far short of the kind of purposeful act by Cunningham directed at the forum state such as to subject him to personal jurisdiction in Texas. In sum, Plaintiffs have not made a prima face case that this Court has personal jurisdiction over Scott Cunningham.

III.   <u>Transfer Venue</u>

Plaintiffs request that if the Court finds that it lacks personal jurisdiction over Cunningham that instead of dismissing the case, the Court transfer it to Colorado.[11]

Under 28 U.S.C. § 1406(a), when venue is found to be improper, "[t]he district court . . . shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."   28 U.S.C. § 1406(a). "Although both sections [1404 and 1406] were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege."   <u>Van Dusen v. Barrack</u>, 84 S. Ct. 805, 818 (1964).  "The problem which gave rise to the enactment of [§ 1406(a)] was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn."   <u>Goldlawr, Inc. v. Heiman</u>, 82 S. Ct. 913, 915 (1962).  "The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in

---

[11] Document No. 12 at 5-6.

9

which it was filed had personal jurisdiction over the defendants or not." Id. at 916. "The district court has broad discretion in deciding whether to order a transfer." Caldwell v. Palmetto State Savs. Bank of S.C., 811 F.2d 916, 919 (5th Cir. 1987) (citations omitted).

After due consideration of the arguments made by Cunningham for dismissal, and by Plaintiffs for transfer, it appears to be in the interest of justice to transfer this case to the District Court of Colorado.

### IV.   Order

For the foregoing reasons, it is hereby

ORDERED   that   Plaintiffs   Hamilton   Brothers   Petroleum Corporation's, BHP Billiton Petroleum Great Britain, Limited's, and BHP Petroleum (U.K.) Corporation's request to transfer this suit to the District of Colorado is GRANTED, and this case is TRANSFERRED to the United States District Court for the District of Colorado, Denver, Colorado, pursuant to 28 U.S.C. § 1406(a); and it is further

ORDERED that Defendant Scott A. Cunningham's Motion to Dismiss Complaint for Lack of Personal Jurisdiction (Document No. 9), which correctly  argues  that  this  Court  does  not  have  personal jurisdiction over Cunningham, is DENIED as moot because of the transfer hereinabove ordered.

10

The Clerk will mail a copy of this Order of Transfer to the Clerk of the United States District Court for the District of Colorado, and shall notify all parties and provide them with a true copy of this Order.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 29th day of January, 2013.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

11